UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SAIM SARWAR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket no. 2:20-cv-00483-GZS |
| | ) |
| OM SAI, LLC, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**ORDER OF DISMISSAL**

Before the Court is Defendant's Motion to Dismiss Complaint (ECF No. 10). Via this Motion, Defendant asks the Court to find that Plaintiff lacks standing to pursue his claim under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189. For reasons explained herein, the Court GRANTS the Motion.

**I.    LEGAL STANDARD**

Defendant's Motion invokes Federal Rule of Civil Procedure 12(b)(1), which requires dismissal of claims over which this Court lacks subject matter jurisdiction. A federal court is obligated to ensure the existence of subject matter jurisdiction before considering the merits of any complaint. See, e.g., United States v. University of Mass., Worcester, 812 F.3d 35, 44 (1st Cir. 2016). Plaintiffs generally bear the burden of demonstrating subject matter jurisdiction. See, e.g., Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996). Faced with a motion to dismiss based on lack of jurisdiction, the Court applies the same "plausibility standard applicable under Rule 12(b)(6)" to the operative complaint. Hochendoner v. Genzyme Corp., 823 F.3d 724, 730

(1st Cir. 2016). However, the Court may also consider additional materials submitted by either side that allow it to resolve the jurisdictional challenge. See Valentin v. Hospital Bella Vista, 254 F.3d 358, 363-64 (1st Cir. 2001) (noting that "plaintiff's well-pleaded factual allegations . . . [may be] augmented by an explanatory affidavit or other repository of uncontested facts").

In accordance with Article III of the Constitution, federal courts may only decide cases that "embody a genuine, live dispute between adverse parties." Carney v. Adams, 141 S. Ct. 493, 498 (2020) (explaining that this requirement "prevent[s] the federal courts from issuing advisory opinions"). The doctrine of standing implements this requirement by imposing three key requirements on a plaintiff: "(1) . . . an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). "The plaintiff bears the burden of establishing these elements and must plead sufficient factual matter to plausibly demonstrate standing to bring the action." Perez-Kudzma v. United States, 940 F.3d 142, 145 (1st Cir. 2019) (internal citations and quotation marks omitted); see also Uzuegbunam v. Preczewski, 141 S. Ct. 792, 796 (2021) ("The doctrine of standing generally assesses whether [a plaintiff's personal] interest exists at the outset.")

As to injury in fact, the "first and foremost of standing's three elements," the Supreme Court has explained that "Congress cannot erase [the injury-in-fact requirement] by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." Spokeo, 136 S. Ct. at 1547-48 (internal quotation marks omitted). Thus, even when a plaintiff bases his case on the violation of a federal statute, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan, 504 U.S. at 560); see

also <u>Thole v. U.S. Bank N.A.</u>, 140 S. Ct. 1615, 1620 (2020) ("This Court has rejected the argument that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." (internal quotation marks omitted)).

## II.  FACTUAL BACKGROUND

Plaintiff Saim Sarwar is a resident of New York. He "is unable to engage in the major life activity of walking more than a few steps without assistive devices." (Am. Compl. (ECF No. 8), PageID # 25.) He also has "limited use of his hands," which impacts his ability to grasp objects. (<u>Id.</u>) Outside his home, he "often uses a wheelchair." (<u>Id.</u>) Sarwar is a self-proclaimed "advocate" for "similarly situated disabled persons." (<u>Id.</u>, PageID # 26.) His advocacy focuses on working as "a 'tester' for the purpose of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and their websites are in compliance with the ADA." (<u>Id.</u>) More specifically and as it relates to this case, Sarwar tests online reservation systems ("ORS") of hotels and lodging establishments to ensure that these systems comply with ADA regulations regarding making reservations for accessible guest rooms. <u>See</u> 28 C.F.R. § 36.302(e)(1).

Defendant Om Sai, LLC ("Om Sai") owns and operates the Brookside Motel, which is located in Saco, Maine. By operating this lodging establishment, Om Sai is subject to the various regulations that seek to ensure places of public accommodation are accessible to disabled persons. Prior to December 30, 2020, Sarwar visited the ORS for the Brookside Motel multiple times "for the purpose of reviewing and assessing the accessible features at the Property and ascertain[ing] whether they meet the requirements of 28 C.F.R. § 36.302(e) and his accessibility needs." (Am.

Compl., PageID # 28.)  Sarwar has "had plans to travel to New England, including Maine to sightsee" in Maine's coastal towns "since before [he] filed this case." (Sarwar Decl. (ECF No. 13-1), PageID #s 95-96.)  He "intend[s] to travel in August 2021." (Id., PageID # 96.)

Prior to December 30, 2020, when Sarwar visited www.brooksidemotelandcottages.com, the ORS "failed to identify accessible rooms, failed to provide an option for booking an accessible room, and did not provide sufficient information as to whether the rooms or features at the hotel are accessible."[1] (Am. Compl., PageID # 29.)  Sarwar asserts that the failure to include this accessibility information deprives him of the ability "to make meaningful choices for travel." (Id., PageID # 30.)  He further asserts that the conditions he encountered when visiting the ORS from his home caused him to suffer "frustration and humiliation as the result of the discriminatory conditions present at [this] website" and "contribute[d] to [his] sense of isolation and segregation." (Id.)

In other similar cases filed in this District[2] and federal courts in various other states, Sarwar claims to have documented similar problems with the ORS of other lodging establishments.  In total, he has filed at least 248 similar cases involving non-compliant ORS. (See Def. Ex. A (ECF No. 10-1).)  Sarwar "maintains a list of all hotels he has sued . . . [and] continually updates this list." (Am. Compl., PageID # 30.)

---

[1] Sarwar encountered similar problems when he visited various alternative ORS for the Brookside Motel including at https://liveipms247.com.com, www.booking.com, www.priceline.com, and www.agodas.com. Am. Compl., PageID # 29.  For purposes of the present motion, the Court does not consider or address whether Defendant can be liable for the accessibility information found on each of these third-party ORS.  But see, e.g., Laufer v. Patel, No. 1:20-CV-631-RP, 2021 WL 796163, at *4 (W.D. Tex. Mar. 2, 2021) (noting that "most courts in the Fifth Circuit that have considered whether an e-tester had standing to sue about third-party hotel booking websites have concluded that the e-tester lacked standing").

[2] See, e.g., Sarwar v. KBS Enterprises, Inc., D. Me. Docket No. 1:20-cv-00484-GZS, Sarwar v. Khaqan, D. Me. Docket No. 1:20-cv-00486-GZS, Sarwar v. Auburn Fireside Inn, LLC, D. Me. Docket No. 2:20-cv-00355-GZS, Sarwar v. Bucksport Motel Properties, Inc., D. Me. Docket No. 1:21-cv-00008-GZS, Sarwar v. Clipper LLC., D. Me. Docket No. 1:21-cv-00009-GZS, Sarwar v. Bucksport Motor Inn, LLC, D. Me. Docket No. 1:21-cv-000010-GZS, Sarwar v. Malek, D. Me. Docket No. 1:21-cv-000051-GZS.

In this case, Sarwar ultimately seeks a declaratory judgment, an injunction requiring Defendant to bring its ORS into compliance with 28 C.F.R. § 36.302(e)(1), as well as attorney's fees and costs.

## III.   DISCUSSION

Defendant urges the Court to dismiss this action due to Plaintiff's lack of standing; more specifically, due to Plaintiff's lack of any plausible injury that is concrete and imminent.  (See Def. Mot. (ECF No. 10), PageID #s 37-40.)  At the outset, it is important to note that Sarwar is only alleging a violation of the ADA's "Reservations Rule" [3] found in 28 C.F.R. § 36.302(e)(1).  He does not allege that Defendant's establishment has physical barriers that violate applicable ADA building standards, nor does he allege that the ORS itself is inaccessible.  Thus, his claimed injury is an informational injury, which Plaintiff insists is sufficient to satisfy the injury-in-fact requirement.  (See Pl. Response (ECF No. 13), PageID #s 77-92.)  On the record presented, the Court disagrees.

The Supreme Court has recognized informational injuries as a basis for standing previously.  First, in Havens Realty Corp v. Coleman, 455 U.S. 363 (1982), the Supreme Court held that a tester had standing to sue under the Fair Housing Act when he was denied "truthful information concerning the availability of housing."  Id. at 373.  Then, in Public Citizen v. United States Department of Justice, 491 U.S. 440 (1989), the Court found that an advocacy group suing for information under the Federal Advisory Committee Act could establish standing by showing

---

[3] See, e.g., Arroyo v. JWMFE Anaheim, LLC, No. 8:21-cv-00014-CJC-KES, 2021 WL 936018, at *1 (C.D. Cal. Feb. 16, 2021) (referring to 28 C.F.R. § 36.302(e) as "the ADA's Reservation Rule"); Love v. Wildcats Owner LLC, No. 4:20-cv-08913-DMR, 2021 WL 1253739, at *3 (N.D. Cal. Apr. 5, 2021) (detailing the requirements of 28 C.F.R. § 36.302(e) and referring to these requirements as the "Reservations Rule").

"that they sought and were denied" information subject to disclosure under this statute. Id. at 449. Almost a decade later, in Federal Election Commission v. Akins, 524 U.S. 11 (1998), the Supreme Court found that voters had standing under the Federal Election Campaign Act to obtain information subject to disclosure under that Act. See id. at 21. In considering these Supreme Court precedents, the First Circuit has explained that all "relied on Congress's power to identify 'previously inadequate' intangible injuries and protect them with 'procedural right[s]' whose infraction 'constitute[s] injury in fact' without proof of 'any *additional* harm beyond the one Congress has identified.'" Amrhein v. eClinical Works, LLC, 954 F.3d 328, 333 (1st Cir. 2020) (quoting Spokeo, 136 S. Ct. at 1549). However, in the same decision, the First Circuit acknowledged, "[t]here are limits; even Congress can't spin a 'bare procedural violation, divorced from any concrete harm' into an 'injury-in-fact.'" Id. (quoting Spokeo, 136 S. Ct. at 1549).

Plaintiff asserts that by seeking to vindicate the Reservations Rule, he "falls squarely within the holding of Havens Realty and its progeny." (Pl. Response, PageID # 91.) However, in the Court's assessment, finding standing based solely on Plaintiff's status as an e-tester who sustained an informational injury while generally conducting online research of lodging options would require an expansion of the holdings of Havens Realty, Akins, and Public Citizen into the ADA context. See, e.g., Carello v. Aurora Policemen Credit Union, 930 F.3d 830, 835 (7th Cir. 2019) (Barrett, J.) (declining to hold that standing under the ADA can be based on informational injury theory where plaintiff was seeking "accessibility accommodations, not disclosure"). Most recently, the First Circuit has held that "status as testers does not defeat standing" under the ADA. Suárez-Torres v. Panaderia y Reposteria Espana, Inc., 988 F.3d 542, 551 (1st Cir. 2021). However, the corollary to this holding is that status as a tester likewise does not necessarily confer standing. Thus, the Court concludes that Plaintiff must establish that his informational injury is, in fact, both

6

concrete and imminent. For the reasons that follow, the Court ultimately concludes that Plaintiff does not meet either of these requirements.

### A. Plaintiff's Injury is Not Concrete.

"Article III standing requires a concrete injury even in the context of a statutory violation." Spokeo, 136 S. Ct. at 1549. Thus, the Court must consider "(1) whether the statutory provisions at issue were established to protect [Plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." Robins v. Spokeo, Inc., 867 F.3d 1108, 1113 (9th Cir. 2017) (considering the concreteness requirement of standing on remand), cert. denied, 138 S. Ct. 931 (2018).

In relevant part, Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). This prohibition on discrimination may be enforced by "any person who is being subjected to discrimination on the basis of disability." 42 U.S.C. § 12188 (a)(1).

As to the first prong of concreteness, the just-quoted ADA provisions were established to protect the concrete interests of disabled persons in accessing places of public accommodation. Here, Plaintiff claims discrimination only in the ORS, not in the actual concrete place of public accommodation.[4] Thus, in some ways Plaintiff's claim could be characterized as "procedural" to

---

[4] The extent to which websites should be viewed as covered by Title III of the ADA is an emerging area of dispute. Compare Gil v. Winn-Dixie Stores, Inc., 993 F.3d 1266, 1277 (11th Cir. 2021) (holding that "websites are not a place of public accommodation under Title III of the ADA"), with Robles v. Domino's Pizza, LLC, 913 F.3d 898, 905–06 (9th Cir.) (holding that "the ADA applies to Domino's website and app, which connect customers to the goods and services of Domino's physical restaurants"), cert. denied, 140 S. Ct. 122 (2019).

the extent that his chief complaint is that he cannot research and reserve accessible accommodations using the same procedure that is set up for non-accessible accommodations. Nonetheless, the Court assumes without deciding that Plaintiff is adequately invoking protection of his concrete interests under the ADA to "full and equal enjoyment" of Defendant's accommodations. 42 U.S.C. § 12182(a).

Turning to the second prong of concreteness, the Court must consider the actual harm caused by the alleged violations. Here, the Court concludes that the violations alleged do not amount to a harm or a material risk of harm to Plaintiff's concrete interests in accessing Defendant's place of public accommodation. Simply put, Plaintiff lacked any intention to actually access Defendant's place of public accommodation when he visited the ORS. Even as he has augmented his factual narrative via an Amended Complaint, he has not claimed an intent to visit the Brookside Motel.[5] While Plaintiff maintains that any disabled person who visits an ORS and concludes that the ORS violates the ADA's Reservations Rule should have standing to sue the lodging establishment regardless of their intention to make a reservation and visit the establishment, multiple courts have now rejected this view. See, e.g., Laufer v. Mann Hosp., L.L.C., --- F.3d ----, No. 20-50858, 2021 WL 1657460, at *2 (5th Cir. Apr. 28, 2021) ("[Plaintiff] visited the ORS to see if the motel complied with the law, and nothing more. Such allegations do not show enough of a concrete interest in Mann's accommodations to confer standing."); Laufer v. Looper, No. 1:20-cv-02475-NYW, 2021 WL 330566, at *5 (D. Colo. Jan. 11, 2021) ("[W]ithholding of information itself does not constitute a concrete injury—the information must have some relevance to the litigant.") (citing Griffin v. Department of Labor Fed. Credit Union,

---

[5] Notably, Sarwar's 3/23/21 Declaration contains more detailed travel allegations than his Amended Complaint. However, the Court reads this Declaration as only asserting a general plan to travel to New England, including coastal areas of Maine, in August 2021. See Sarwar Decl., PageID #s 95-96.

912 F.3d 649, 654 (4th Cir. 2019)); Laufer v. Naranda Hotels, LLC, Nos. 1:20-cv-2136-SAG & 8:20-cv-1974-SAG, 2020 WL 7384726, at *4 (D. Md. Dec. 16, 2020) ("Pure testers, by definition, have no desire to actually use the room reservation website, and the information required by § 36.302(e)(1) has no specific relevance to them beyond their generalized desire to find ADA violations and file lawsuits."); Laufer v. Dove Hess Holdings, LLC, No. 5:20-cv-00379-BKS-ML, 2020 WL 7974268, at *15 (N.D.N.Y. Nov. 18, 2020) ("[T]o allege an injury-in-fact for standing purposes, a plaintiff challenging a website's ADA violations must demonstrate that she had a purpose for using the website that the complained-of ADA violations frustrated, such that any injury is concrete and particularized to the plaintiff.")  In short, to plausibly allege concrete harm based on a violation of the Reservations Rule, a plaintiff must have a genuine plan to make a reservation.[6] An intent "to visit the area" in the near future is insufficient. (Pl. Response, PageID # 92.)

### B.     Plaintiff's Injury is Not Imminent.

"[T]o create standing, a threatened injury must be 'imminent' or 'actual' when the plaintiffs filed their complaint." Amrhein, 954 F.3d at 332 (citations omitted). Here, taking judicial notice of the state of the COVID-19 pandemic and the travel restrictions then in place, the Court is hard pressed to see how Plaintiff faced an imminent injury in December 2020, when he filed his initial complaint in this matter. However, the Court acknowledges that the state of the pandemic and the facts alleged in the operative pleading have changed in the intervening months. In his March 23, 2021 Declaration (ECF No. 13-1), Sarwar asserts that he "intend[s] to travel in August

---

[6] Here, Plaintiff has not claimed his visits to Defendant's ORS were motivated by a genuine plan to make reservations, nor has he alleged that if the ORS were brought into compliance, he would make a reservation at the Brookside Motel. Cf., e.g., Civil Rights Educ. & Enforcement Ctr. v. Hospitality Prop. Tr., 867 F.3d 1093, 1099 (9th Cir. 2017) (noting that plaintiffs' allegation "that they will visit the hotels when the non-compliance is cured" was critical to finding standing).

9

2021." (Sarwar Decl., PageID # 96.)  Nonetheless, Sarwar does not and has not plausibly asserted that his pre-filing visits to Defendant's ORS were for purposes of making a reservation.  Moreover, taking judicial notice of Sarwar's many similar cases filed in courts around the country, the Court finds it implausible that Sarwar has an imminent need to book accommodations in Colorado, Connecticut, District of Columbia, Georgia, Illinois, Maine,[7] Massachusetts, Maryland, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Texas, Vermont, and Wisconsin.  (See Def. Ex. A (ECF No. 10-1), PageID #s 42-60.)

In this case, the nature of the injunctive relief sought by Plaintiff requires that he show that he "faces a 'real and immediate threat' of future injury."  Carello, 930 F.3d at 835 (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983));  see also Sarwar v. Omkar Raj 2017, LLC, No. 3:20-cv-00099-CDL, 2021 WL 1654850, at *3 (M.D. Ga. Apr. 15, 2021) ("Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury.") (internal quotations and citations omitted)  On the record presented, the Court concludes that Plaintiff does not allege an immediate future injury from this particular Defendant's ORS.  See Lujan, 504 U.S. at 564 ("'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'") (quoting Lyons, 461 U.S. at 102).

Thus, the Court ultimately concludes that Sarwar has not asserted a plausible injury that is concrete and imminent as it relates to this Defendant.  The Court certainly recognizes that the issue of standing to pursue Title III ADA claims based on a tester's documented violations of the

---

[7] The Court notes that within Maine Sarwar has asserted plans to stay in Saco, Bucksport, Belfast, and other coastal towns.  See 3/23/21 Sarwar Decl., PageID # 96; 2/16/21 Sarwar Decl. (ECF No. 12-1 in Sarwar v. Bucksport Motel Prop., Inc., D. Me Docket No. 1:21-cv-00008-GZS), PageID # 72;  4/1/21 Sarwar Decl. (ECF No. 13-3 in Sarwar v. Clipper, LLC, D. Me. Docket NO. 1:21-cv-0009-GZS), PageID # 126.

10

Reservations Rule has divided the federal courts.[8]  However, on the record presented, the Court concludes that Sarwar has only plausibly alleged a "a bare procedural violation" of 28 C.F.R. § 36.302(e)(1) as it relates to this Defendant.  Spokeo, 136 S. Ct. at 1549.  Sarwar's work to ensure that accessibility information is in fact accessible to those planning a trip to Maine is undeniably admirable.  But, such an interest does not amount to an injury that confers constitutional standing and, thus, does not give rise to a live case or controversy over which this Court has jurisdiction. See, e.g., McInnis-Misenor v. Maine Med. Ctr., 319 F.3d 63, 73 (1st Cir. 2003) (affirming dismissal of Title III claim based on ripeness and prudential standing upon finding plaintiff's "claimed injury may never come to pass").

## IV.    CONCLUSION

For the reasons just stated, the Court hereby GRANTS Defendant's Motion to Dismiss (ECF No. 10).

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 18th day of May, 2021.

---

[8] Compare, e.g., Laufer. v. Lilly Pond LLC C Series, No. 3:20-cv-617-wmc, 2020 WL 7768011, at *5 (W.D. Wis. Dec. 30, 2020) (finding standing but certifying the issue for interlocutory appeal), Laufer v. Surf Hotel Investments, LLC, Docket No. 1:20-cv-5364, 2021 WL 809732, at *2 (N.D. Ill. March 3, 2021) (finding standing and collecting cases similarly finding), Laufer v. Drashti Batavia LLC, No. 1:20-cv-407-LJV-MJR (W.D.N.Y. March 22, 2021) (slip opinion filed as ECF No. 23-1); Laufer v. Jamestown Hotel LLC, No. 1:20-cv-367-LJV-MJR (W.D.N.Y. March 22, 2021) (slip opinion filed as ECF No. 23-2), with Laufer v. Mann Hosp., L.L.C., No. 20-50858, 2021 WL 1657460 (5th Cir. Apr. 28, 2021) (affirming dismissal based on lack of injury in fact);  Laufer v. Looper, No. 1:20-cv-02475-NYW, 2021 WL 330566 (D. Colo. Jan 11, 2021) (dismissing for lack of standing); Laufer v. Naranda Hotels, LLC, 2020 WL 7384726, at*9 (D. Md. Dec 16, 2020) (finding that Laufer "lacks standing, lacks credibility and is not operating in good faith");  Laufer v. Dove Hess Holdings, LLC, No. 5:20-cv-00379-BKS-ML, 2020 WL 7974268, at *15 (N.D.N.Y. Nov. 18, 2020), motion to certify appeal denied, 2021 WL 365881 (N.D.N.Y. Feb. 3, 2021).